Below is an Opinion of the Court.

*[signature]*
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| | ) No. 12-36033-rld13 |
| RONALD WARREN JOHNSON | ) |
| VERA MORIN JOHNSON, | ) |
| | ) |
| Debtor. | ) |
| MARY ELIZABETH VOLM, | ) |
| | ) Adversary Proceeding |
| Plaintiff, | ) No. 12-03301-rld |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| RONALD WARREN JOHNSON, | ) |
| | ) |
| Defendant. | ) |

On March 11, 2013, I heard argument (the "Hearing") on plaintiff Mary Elizabeth Volm's ("Ms. Volm") Motion for Summary Judgment ("SJ Motion") on her § 523(a)(6)[1] claim for relief in this adversary proceeding ("Adversary Proceeding"). Defendant Ronald Warren Johnson

---

[1] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Page 1 - MEMORANDUM OPINION

("Mr. Johnson") opposed the SJ Motion. Following the Hearing, I authorized counsel for Mr. Johnson to file a further Declaration supporting his position by March 15, 2013. I also authorized counsel for Ms. Volm to file a further supporting Declaration by March 22, 2013. Following the submission of the parties' further Declarations, I closed the record and took the SJ Motion under advisement.

I have reviewed the Adversary Proceeding pleadings, including the complaint and the parties' legal memoranda filed in support of and in opposition to the SJ Motion. I also have reviewed their evidentiary submissions and applicable authorities, both as cited to me and as located through my own research. I further have taken judicial notice of the docket and documents filed in Mr. Johnson's main chapter 13 case, Case No. 12-36033-rld13 ("Johnson Main Case"), for purposes of confirming and ascertaining facts not reasonably in dispute. Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006).

This Memorandum Opinion sets forth my conclusions of law in light of the record before me pursuant to Civil Rule 52(a), applicable in this Adversary Proceeding pursuant to Rule 7052.

### Facts

This narrative of background facts recounts relevant information primarily relying on Ms. Volm's Concise Statement of Material Facts ("Concise Statement"). However, where Mr. Johnson's Response ("Response") to the Concise Statement provides conflicting information, I have noted the inconsistencies. I also have looked to the Declarations and documentary evidence submitted by the parties to corroborate the factual statements included here. If I have determined that statements

Page 2 - MEMORANDUM OPINION

included in the Concise Statement are irrelevant to the issues I must decide, I have omitted any reference to such statements.

The claim in this Adversary Proceeding arose from an unfortunate traffic incident that occurred on July 10, 2008. In Paragraph 5 of the Concise Statement, Ms. Volm states that Mr. Johnson was driving a sport utility vehicle-style limousine in downtown Portland when he failed to navigate a turn and became stuck in an intersection. As Mr. Johnson began backing up his limousine, Ms. Volm, who was riding a motor scooter directly behind Mr. Johnson's vehicle, called out to Mr. Johnson in an effort to stop him from running into her with the rear of his vehicle. After hearing Ms. Volm call out, Mr. Johnson got out of his vehicle, cursed at Ms. Volm, pushed Ms. Volm's scooter approximately nine feet forward, and returned to his vehicle to attempt again to back out of the intersection. Ms. Volm, who was now trapped between Mr. Johnson's vehicle and oncoming traffic, became concerned that Mr. Johnson's attempts to back out of the intersection would result in Mr. Johnson hitting her with his vehicle. To signal her presence to Mr. Johnson and prevent him from hitting her, Ms. Volm smacked the side of Mr. Johnson's vehicle with her open hand. According to Ms. Volm, at that point, Mr. Johnson got out of his vehicle again, took Ms. Volm by the shoulders, threw her down on the ground, stood over her and threatened to punch her.

Mr. Johnson denies the fact allegations in paragraph 5 of the Concise Statement and states that he was acting in defense of his property after seeing Ms. Volm intentionally trying to damage his vehicle. In a Declaration filed in the parties' state court lawsuit, Mr. Johnson states that Ms. Volm kicked his limousine, and he watched her do

Page 3 - MEMORANDUM OPINION

it. See Exhibit 102.

In paragraph 6 of the Concise Statement, Ms. Volm states that Mr. Johnson admitted that during the July 2008 incident, he loudly yelled profanities at Ms. Volm; he pushed her scooter forward in an attempt to move Ms. Volm and her scooter out of the traffic lane; and he grabbed Ms. Volm's wrist, elbow and upper arm. Mr. Johnson also admitted that he threatened to punch Ms. Volm in the nose and called her a "fucking bitch."

Mr. Johnson admits that the statements in paragraph 6 of the Concise Statement are true but "are taken out of context given the totality of the testimony." Mr. Johnson then reiterates that he was acting to defend his property from intentional damage.

In April 2010, Ms. Volm filed a civil action ("Civil Action") against Mr. Johnson, Volm v. Johnson, in Multnomah County Circuit Court ("Circuit Court"), Case No. 100405336, alleging claims for assault, battery and intentional infliction of severe emotional distress resulting from the July 2008 incident. See Exhibit C.

Following a jury trial in May 2011, the jury returned a verdict in which Mr. Johnson admits that the jury found Mr. Johnson at "fault in one or more ways the plaintiff claims. . . ."[2]

On June 9, 2011, the Circuit Court entered a General Judgment and Money Award ("Judgment") in the Civil Action, including the following findings:

---

[2] It is unclear from the record where this quotation comes from. Counsel for Mr. Johnson submitted a copy of the Verdict form as Exhibit 101 to his Second Corrected Declaration, but the submitted Verdict form is not filled in. See Exhibit 101, Adversary Proceeding Docket No. 33.

Page 4 - MEMORANDUM OPINION

> The jury found defendant liable on plaintiff's claims and awarded Plaintiff $1,500.00 in economic damages and $32,000.00 in noneconomic damages. The jury found plaintiff liable on defendant's claim for property damage and awarded defendant $368.00 in economic damages.

The Judgment provided that interest would accrue on Ms. Volm's award at 9% from the date of entry of the Judgment. <u>See</u> Exhibit D. No evidence was submitted indicating that Mr. Johnson appealed the Judgment.

On July 29, 2011, the Circuit Court entered an order approving a supplemental award ("Cost Award") of Ms. Volm's costs and attorney's fees as prevailing party in the Civil Action in the amount of $2,189.50. <u>See</u> Exhibit E. Ms. Volm asserts that the net liability owed by Mr. Johnson to Ms. Volm as a result of the Judgment and the Cost Award is $35,321.50. She further asserts that she has received payments totaling $467.45 on the Judgment and Cost Award liability. By her calculations, as of December 11, 2012, Mr. Johnson owed $34,854.05 in principal and $4,705.29 in accrued interest, a total of $39,559.34. Mr. Johnson admits these assertions of Ms. Volm but also asserts that no partial satisfaction of judgment has been filed to offset the $368 in economic damages Mr. Johnson was awarded against Ms. Volm in the Judgment.

Mr. Johnson filed a voluntary petition for relief under chapter 13 on August 3, 2012. His modified chapter 13 plan was confirmed by order entered on January 17, 2013. The complaint in this Adversary Proceeding was timely filed on November 6, 2012. <u>See</u> Adversary Proceeding Docket No. 1.

///

///

Page 5 - MEMORANDUM OPINION

## Jurisdiction

I have jurisdiction to decide the SJ Motion under 28 U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(I).

## Discussion

A.  Summary Judgment Standards

Granting a motion for summary judgment is appropriate only if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Civil Rule 56(c); Rule 7056; State Farm Mutual Auto Ins. Co. v. Davis, 7 F.3d 180, 182 (9th Cir. 1993). "Material facts" are such facts as may affect the outcome of a case under governing law. Anderson v.Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute concerning a material fact is "genuine" only if there is sufficient evidence to justify a finding in favor of the nonmoving party. Id. However, all justifiable inferences from the evidence presented are to be considered in favor of the nonmoving party. Id. at 255.

The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). However, once the moving party has met that burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2006) (quoting T.W. Elec. Serv., Ltd. v. Pac. Elec. Contractors Ass'n, 809 F.2d at 630). "[M]ere allegations and speculation do not create a factual dispute for purposes of summary judgment." Nelson v. Pima

Page 6 - MEMORANDUM OPINION

Community College, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

B.  Section 523(a)(6) Standards

Section 523(a)(6) provides an exception from a bankruptcy discharge for a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The Supreme Court provided a seminal authority for interpretation of § 523(a)(6) in Kawaauhau v. Geiger, 523 U.S. 57 (1998), a case concerning whether a medical malpractice judgment should be excepted from the debtor doctor's bankruptcy discharge.

In interpreting § 523(a)(6) in Geiger, the Supreme Court held that,

> The word "willful" in [§ 523](a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."

Id. at 61 (emphasis in original). The Supreme Court further stated that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." Id. The Supreme Court ultimately concluded that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64.

In decisions subsequent to Geiger, the Ninth Circuit has elaborated on the standards discussed by the Supreme Court and has analyzed "willful" and "malicious" as two separate elements of a § 523(a)(6) claim that each must be established by a preponderance of the evidence. See, e.g., Grogan v. Garner, 498 U.S. 279, 286-87 (1991);

Page 7 - MEMORANDUM OPINION

Carrillo v. Su (In re Su), 290 F.3d 1140, 1146 (9th Cir. 2002). For an injury to be "willful," the debtor must have had a subjective motive to inflict injury or must have believed that injury was substantially certain to occur as a result of his or her conduct. Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001). In other words, the debtor must have acted with "actual knowledge that harm to the creditor was substantially certain" to result. In re Su, 290 F.3d at 1146.

"Malicious" injury involves "(1) a wrongful act, (2) 'done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" Murray v. Bammer (In re Bammer), 131 F.3d 788, 791 (9th Cir. 1997), citing Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini), 780 F.2d 1440, 1443 (9th Cir. 1986).

In light of the applicable § 523(a)(6) standards, if my sole focus were on the conflicting versions of the material facts relating to the incident on July 10, 2008, set forth in the Concise Statement and the Response, this would not be an appropriate case for summary judgment. The parties have directly conflicting interpretations of Mr. Johnson's subjective intent, each with evidentiary support. However, there is no genuine dispute as to the facts that the Judgment was entered and what the Judgment states as to the jury's findings. Accordingly, the question becomes whether summary judgment is appropriate based on the issue preclusive effect of the Judgment.

C. Application of Issue Preclusion

Issue preclusion applies in exception to discharge litigation. Grogan v. Garner, 498 U.S. at 284-85 n.11. Under 28 U.S.C. § 1738, the

Page 8 - MEMORANDUM OPINION

Full Faith and Credit Act, I apply Oregon's issue preclusion law to determine the preclusive effect of the Judgment, if any. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001).

The Oregon Supreme Court set forth the test for issue preclusion in Nelson v. Emerald People's Util. Dist., 318 Or. 99, 862 P.2d 1293, 1296-97 (1993), as follows:

> If one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:
>
> 1.   The issue in the two proceedings is identical. North Clackamas School Dist. v. White, . . . 305 Or. [48,] 53, 750 P.2d 485[, modified, 305 Or. 468 (1988)]; State Farm Fire & Cas. v. Reuter, . . . 299 Or. [155,] 158, 700 P.2d 236 [(1985)].
>
> 2.   The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding. Heller v. Ebb Auto Co., 308 Or. 1, 5, 774 P.2d 1089 (1989).
>
> 3.   The party sought to be precluded has had a full and fair opportunity to be heard on that issue. Chavez v. Boise Cascade Corporation, 307 Or. 632, 635, 772 P.2d 409 (1989); State v. Ratliff, . . . 304 Or. [254,] 258, 744 P.2d 247 [(1987)].
>
> 4.   The party sought to be precluded was a party or was in privity with a party to the prior proceeding. North Clackamas School Dist. v. White, . . . 305 Or. at 53, 750 P.2d 485; State Farm Fire & Cas. v. Reuter, . . . 299 Or. at 159, 700 P.2d 236.
>
> 5.   The prior proceeding was the type of proceeding to which this court will give preclusive effect. North Clackamas School Dist. v. White, . . . 305 Or. at 52, 750 P.2d 485; State v. Ratliff, . . . 304 Or. at 258, 744 P.2d 247.

(Emphasis in original.)

Based on the record submitted by the parties, I agree with Ms. Volm that the issues of Mr. Johnson's intent and causation of Ms. Volm's

Page 9 - MEMORANDUM OPINION

injuries were actually litigated in the Civil Action and that Mr. Johnson had a full and fair opportunity to be heard on those issues in the Civil Action.  I also agree with Ms. Volm that she and Mr. Johnson were the very same parties opposing one another in the Civil Action and in this Adversary Proceeding and that the Judgment in the Civil Action would be given preclusive effect, to the extent appropriate, under Oregon law. Accordingly, there is no genuine dispute that four of the five requirements for the application of issue preclusion under Oregon law apply here.

The focus of the parties' dispute is the first Oregon law requirement for the application of issue preclusion, that "[t]he issue in the two proceedings is identical." Id. at 1296.  Mr. Johnson first argues that "without specific findings from the jury verdict, there cannot be issue preclusion as to the elements of intent and malice . . . ."  Defendant's Memorandum Opposing SJ Motion, at 6.  While admitting in the Response that the jury in the Civil Action found Mr. Johnson "at fault in one or more ways" on Ms. Volm's claims, the Verdict form submitted as Mr. Johnson's Exhibit 101 is not completed.  So, from the record submitted by the parties, I have no way of determining exactly what the jury determined in the Civil Action.  However, that is not dispositive. The judge in Circuit Court did know what the jury determined, and, in the Judgment, the Circuit Court specifically concluded that "[t]he jury found defendant liable on [Ms. Volm's] claims."

Since the Judgment does not differentiate among Ms. Volm's claims in making the awards of damages, the question then becomes whether

Page 10 - MEMORANDUM OPINION

the standards for an exception to discharge under § 523(a)(6) are satisfied by a judgment as to each and all of the claims for relief stated in Ms. Volm's complaint in the Civil Action.

In analyzing this question, I note that it is unlikely to the point of impossibility that the elements of a particular state law intentional tort claim will line up exactly with the elements of the "willful" and "malicious" standards under § 523(a)(6) as specified by the Ninth Circuit. However, the real issue is whether the elements of Ms. Volm's state law claims are essentially congruent with the § 523(a)(6) standards, justifying the entry of an exception to discharge judgment consistent with the teachings of Geiger and its progeny. See, e.g., Black and Chernine v. Bonnie Springs Family Ltd. Partnership et al. (In re Black and Chernine), 487 B.R. 202 (9th Cir. BAP 2013).

Ms. Volm stated claims for assault, battery and intentional infliction of severe emotional distress in her complaint in the Civil Action. Under Oregon law, an assault "is an intentional attempt to do violence to the person of another coupled with present ability to carry the intention into effect." Cook v. Kinzua Pine Mills Co., 207 Or. 34, 293 P.2d 717, 723 (1956), citing State v. Olsen, 138 Or. 666, 7 P.2d 792 (1932). A battery is "a voluntary act that is intended to cause the resulting harmful or offensive contact." Walthers v. Gossett, 148 Or. App. 548, 941 P.2d 575, 578 (1997), citing Bakker v. Baza'r, Inc., 275 Or. 245, 249, 551 P.2d 1269 (1976); and Brown v. Far West Federal, 66 Or. App. 387, 390, 674 P.2d 1183 (1984). In McGanty v. Staudenraus, 321 Or. 532, 901 P.2d 841, 849 (1995), the Oregon Supreme Court stated the elements for a claim of intentional infliction of severe emotional

Page 11 - MEMORANDUM OPINION

distress as follows:

> "To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerant conduct." Sheets v. Knight, 308 Or. 220, 236, 779 P.2d 1000 (1989).

In McGanty, the Oregon Supreme Court went on to state that "to satisfy the intent element of this tort, a plaintiff must allege that the defendant acted with the purpose of inflicting severe emotional or mental distress on the plaintiff. 'It is not enough that [the defendant] intentionally acted in a way that causes such distress.' Patten v. J.C. Penney Co., 301 Or. 117, 122, 719 P.2d 854 (1986)." Id.

Common to each of the three claims asserted by Ms. Volm in the Civil Action is a requirement that she establish that Mr. Johnson intended to inflict injury on her in order to prevail. I conclude that such requirements equate with a subjective intent to inflict injury for purposes of establishing the "willful" element under § 523(a)(6). Accordingly, I further conclude that the Judgment finding Mr. Johnson liable on Ms. Volm's claims is preclusive on the issue of "willfulness" under § 523(a)(6).

The analysis for purposes of establishing "malice" under § 523(a)(6) is less straightforward but no less conclusive. Again, common to each of the three claims asserted by Ms. Volm against Mr. Johnson in the Civil Action was that he acted intentionally to inflict injury that, in fact, resulted to Ms. Volm. Assault, battery and intentional infliction of severe emotional distress are intentional torts

Page 12 - MEMORANDUM OPINION

under Oregon law that by their very natures are inherently wrongful acts. Thus, three of the four standards for "malice" under Bammer are accounted for.

Mr. Johnson argues that he acted to defend his limousine from intentional damage, and in that context, his actions were justified and should be excused. The jury's finding, reflected in the Judgment, in Mr. Johnson's favor on his claim for property damage, awarding offsetting damages of $368, lends limited support to his argument. However, the jury's further findings, again reflected in the Judgment, that Ms. Volm was entitled to $1,500 in economic damages and $32,000 in noneconomic damages are so disproportionate in the aggregate to Mr. Johnson's property damage award that, to me, the conclusion is inescapable that the jury ultimately determined that Mr. Johnson's conduct in dealing with Ms. Volm was "without just cause or excuse." In other words, Mr. Johnson's concern for damage to his vehicle may have justified some action to prevent further damage from occurring, but the jury determined in the Civil Action that Mr. Johnson's conduct toward Ms. Volm escalated way beyond what was reasonably justified under the circumstances. Accordingly, I conclude that the Judgment is preclusive on the § 523(a)(6) element of "malice" as well as "willfulness."

## Conclusion

My ultimate conclusion, based on the foregoing analysis of the record presented to me and applicable law, is that Ms. Volm has established the issue preclusive effects of the Judgment in the Civil Action with respect to the required elements of her claim for relief under § 523(a)(6) in the Adversary Proceeding. There are no genuine

issues of material fact militating against the entry of summary judgment. Accordingly, I will grant the SJ Motion. Within ten (10) days of the entry of this Memorandum Opinion, Mr. Wilner-Nugent should submit a consistent order and judgment.

###

cc: Bear Wilner-Nugent, Esq.
Steven C. Burke, Esq.